**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**KRISTOPHER DANIEL MATHEWS**                      **PLAINTIFF**

**V.**                                                 **NO. 1:19-CV-137-DMB-DAS**

**CITY OF BOONEVILLE, MISSISSIPPI,
et al.**                                              **DEFENDANTS**

**ORDER**

After the City of Booneville's board of aldermen terminated Kristopher Daniel Mathew's employment as a firefighter, Mathews filed a statutory notice appealing the matter to the Circuit Court of Prentiss County. The City of Booneville removed the action to this Court and then moved for judgment on the pleadings as to causes of action asserted in the notice of appeal. For the reasons explained below, judgment on the pleadings will be granted on Mathews' due process claim, equal protection claim, and state law tort claims but otherwise will be denied.

**I
Procedural History**

On July 8, 2019, Kristopher Daniel Mathews, pursuant to § 11-51-75 of the Mississippi Code, filed in the Circuit Court of Prentiss County, Mississippi, a "Notice of Appeal" challenging the City of Booneville's decision to terminate his employment as a firefighter. Doc. #2. In addition to asserting his statutory right of appeal in the notice of appeal, Mathews asserts claims for injunctive relief and damages based in part on alleged violations of the United States Constitution, and seeks a jury trial on such claims. *Id*. at ¶¶ 16–29. The City filed "Appellee's Answer and Affirmative Defenses to Notice of Appeal" on July 17, 2019. Doc. #7-3.

Two days later, the City removed the state court case to the United States District Court for the Northern District of Mississippi based on federal question jurisdiction. Doc. #1. On August

6, 2019, the City filed a "First Amended Answer and Defenses" to the notice of appeal. Doc. #8. On September 23, 2019, the City filed a motion for judgment on the pleadings. Doc. #10. The motion has been fully briefed. Docs. #14, #16.

## II
## Standard

Motions for judgment on the pleadings are evaluated under "the same standard as a motion to dismiss under Rule 12(b)(6)." *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 504 (5th Cir. 2019). Thus, a court must ask whether "confined to the pleadings and accepting the allegations as true … the complaint states a valid claim for relief." *Id*. (quotation marks omitted). In making this determination, a court may consider "the pleadings and … any facts of which the court may take judicial notice." *Mullins v. Crouch*, 391 F. Supp. 2d 457, 460 (N.D. Tex. 2005). "[T]he fact allegations of the complaint are to be taken as true, but those of the answer are taken as true only where and to the extent that they have not been denied or do not conflict with those of the complaint." *Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir. 1956); *see NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 8 (1st Cir. 2002) ("[A] Rule 12(c) motion must be filed at the close of pleadings, and must be based solely on the factual allegations in the complaint and answer.").

## III
## Factual Allegations

During the time period relevant to this action, Mathews was employed as a lieutenant in the City of Booneville's Fire Department. Doc. #2 at ¶ 7. Also during the relevant time, the City of Booneville maintained an "Employees Policies and Procedures Manual" which, among other things, authorized disciplinary action up to termination for an "[a]bsence from work without notifying [the] Department Head." *Id*. at PageID #123. The manual required that any discipline "adhere with dues [sic] process." *Id*. at PageID #122.

During the evening of Wednesday, June 12, 2019, Mathews fell "ill with significant chest pains and nausea." *Id.* at ¶ 9. Due to his illness, Mathews failed to report for his 6:00 a.m. shift the following morning. *Id.* Mathews did not notify the station of his absence. *Id.* However, at approximately 6:45 a.m. that morning, a firefighter returning from the night shift stopped at Mathews' residence and spoke with Mathews' wife. *See id.* & Ex. A. Mathews' wife informed the firefighter that Mathews was ill. *Id.* at Ex. A.

On June 13, 2019, Mathews presented to the Faith Family Clinic in Kossuth, Mississippi. *Id.* at ¶ 10. The clinic found Mathews was suffering from an "irregular heartbeat," and medically excused him from work until June 16, 2019. *Id.* & Ex. B. On June 19, 2019, Battalion Chief Mike Kilgore issued Mathews a written warning for failing to show up for his shift and for failing to notify the Fire Department of his absence. *Id.* at ¶ 11 & Ex. C. Sometime later, Fire Chief Michael Rutherford docked Mathews one day of pay for the absence. *Id.* at Ex. F. Mathews continued to work as a firefighter until July 2, 2019, when the Booneville Board of Aldermen voted to terminate his employment. *Id.* at ¶ 8. According to Mathews, this vote was taken "without timely notice … nor upon recommendation of the City's Fire Chief." *Id.*

## IV
## Analysis

Mathews' state court complaint, which is included in his "Notice of Appeal," is strangely structured. *See* Doc. #2. The pleading includes a "Background Facts and Allegations" section which, in addition to pleading the relevant factual background, appears to include claims for wrongful termination, violation of the Fourteenth Amendment right to procedural due process, and violation of the Fourteenth Amendment right to equal protection. *Id.* at 3–5. Mathews then asserts a "Claim for Temporary Injunction," a "Claim for Compensatory Damages," and a "Demand for Punitive Damages." *Id.* at 5–7. In his prayer for relief, Mathews also asks "that the decision of

the City … to terminate his employment [be] overturned." *Id.* at 7.

The City's motion for judgment on the pleadings seeks dismissal of all claims other than the statutory appeal of the termination decision. *See* Doc. #10. The City argues that under Mississippi law, a "petitioner cannot bring other actions in the statutory notice of appeal." Doc. #11 at 1. Beyond this, the City argues that (1) "[a]ny injunctive relief sought by Plaintiff as a separate claim outside of his Notice of Appeal should … be denied," *id.* at 5; (2) the state-law tort claims are subject to dismissal under the Mississippi Tort Claims Act, *id.* at 5–6; (3) the wrongful termination claims must be dismissed because Mathews has not pled an exception to Mississippi's at-will employment rule, *id.* at 7; (4) the due process claims must be dismissed because Mathews was afforded due process, *id.* at 8–9; (5) the equal protection claim fails because Mathews has not identified a protected class or pled discriminatory intent, *id.* at 9–10; and (6) even if Mathews could establish a constitutional violation, he has not established a basis for municipal liability, *id.* at 10–12.

### A. Consideration of Claims Outside Notice of Appeal

Pursuant to § 11-51-75 of the Mississippi Code,

[a]ny person aggrieved by a judgment or decision of the board of supervisors of a county, or the governing authority of a municipality, may appeal the judgment or decision to the circuit court of the county in which the board of supervisors is the governing body or in which the municipality is located.

This appeal provision "is an exclusive remedy" for persons seeking to appeal decisions of municipal authorities. *Pearl River Cty. Bd. of Supervisors v. Miss. State Bd. of Educ.*, 289 So. 3d 301, 306 (Miss. 2020). The City, citing *Cheeks v. Smith*, 152 So. 3d 1215, 1217 (Miss. Ct. App. 2014), argues that because the notice of appeal is an exclusive remedy, all claims other than the appeal itself must be dismissed. Doc. #11 at 4. Mathews responds that the City's argument is inconsistent with the Mississippi Supreme Court's holding in *Falco Lime, Inc. v. Mayor and*

4

*Aldermen of the City of Vicksburg*, 836 So. 2d 711 (Miss. 2002). Doc. #14 at 8–9. The City replies that *Falco*, as interpreted by the Fifth Circuit in *MEC, Inc. v. Lowndes Cty. Bd. of Supervisors*, 759 F. App'x 331 (5th Cir. 2019), does not support Mathews' argument. Doc. #16 at 3.

### 1. Applicability of state law

Before addressing the parties' arguments, it is important to clarify the impact of state law on this litigation. Under the doctrine established in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). While the *Erie* doctrine was established in diversity cases, "[t]he *Erie* case and the Supreme Court decisions following it apply in federal question cases as well" when the underlying cause of action is a state law claim. *Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 409 n.1 (5th Cir. 2006); *see Indep. Living Ctr. of S. Cal., Inc. v. Kent*, 909 F.3d 272, 283 (9th Cir. 2018) (in federal question case, holding that "[b]ecause the [claim] is a state-law cause of action, we look to California law to determine whether attorneys' fees are available").

When conducting an *Erie* analysis, a court should first ask whether "a party has alleged a direct conflict between the Federal Rules and state law." *All Plaintiffs v. All Defendants*, 645 F.3d 329, 333 (5th Cir. 2011). If such a conflict is alleged, the court must "determine whether, when fairly construed, the scope of the [Federal] Rule is sufficiently broad to cause a direct collision with the state law or, implicitly, to control the issue before the court, thereby leaving no room for the operation of that law." *Id*. (cleaned up). If a collision exists, the court "must apply the Federal Rule as long as that Rule is a valid exercise of Congress's rulemaking authority." *Id*.

If there is no applicable Federal Rule, "[t]he second *Erie* question is whether the choice between the state and federal [law] would determine the outcome of a litigation." *Weatherly v.*

5

*Pershing, L.L.C.*, 945 F.3d 915, 926 n.53 (5th Cir. 2019) (quotation marks omitted). "This inquiry must be guided by the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id*. (quotation mark omitted). Under this approach, a court should ask whether "application of the [state rule would] have so important an effect upon the fortunes of one or both of the litigants that failure to apply it would unfairly discriminate against citizens of the forum State, or be likely to cause a plaintiff to choose the federal court." *Gasperini*, 518 U.S. at 428 (cleaned up).

As a third inquiry, a court should also, pursuant to *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525 (1958), balance whether the state rule is "bound up" with a state substantive rule and whether the federal rule is an "essential characteristic of federal law." *Weatherly*, 945 F.3d at 926 (quotation marks omitted).

### 2. *Falco*, *Cheeks*, and *MEC*

In *Falco*, the Mississippi Supreme Court considered whether a plaintiff was entitled to a de novo trial when it "filed both a bill of exceptions [under § 11-51-75] and an ordinary complaint" regarding the same decision. 836 So. 2d at 717. The *Falco* court recognized that where a plaintiff seeks relief beyond the bill of exceptions, allowing a de novo trial would permit a plaintiff to "jettison the restrictions of § 11–51–75 simply by tacking on claims against the individual members of the municipal or county board, thus converting a narrowly circumscribed appellate proceeding into a full trial with all the bells and whistles." *Id*. at 720. Thus, the *Falco* court reasoned:

> Where the circuit court finds before it a § 11–51–75 appeal that "arises out of a common nucleus of operative fact" with claims that would ordinarily be resolved by a trial de novo, the better procedure is to function first in its appellate capacity and hear the § 11–51–75 appeal based on the bill of exceptions, and then proceed to the other claims (and the evidence related to them) only if the resolution of the appeal leaves them unresolved. In this manner, the requirements of the statute are

> met, and the circuit court avoids being presented with extraneous material that might compromise its duty to reach its appellate judgment solely on the bill of exceptions before it.

*Id*. Based on this analysis, the *Falco* court found that the circuit court erred in holding a de novo trial on all claims. *Id*. at 720–21.

In *Cheeks*, four former members of the City of Canton Utilities Commission filed a bill of exceptions challenging the City's decision to remove them from the Commission. 152 So. 3d at 1216. The former members also filed a "separate complaint … for injunctive relief from the very same board decision they had just appealed." *Id*. The circuit court dismissed the separate action for injunctive relief and the former members appealed. *Id*. at 1216–17. On appeal, the Mississippi Court of Appeals affirmed the dismissal because "the Mississippi Supreme Court has been crystal clear that parties aggrieved by a municipal board's decision cannot go outside the statutory bill-of-exceptions procedure and seek independent injunctive relief." *Id*. at 1216 (collecting cases).

In *MEC*, the Fifth Circuit considered the res judicata effect on a subsequent § 1983 action of a decision in a § 11-51-75 appeal. 759 F. App'x at 337. At issue was whether the statutory notice of appeal provided a full and fair opportunity to litigate. *Id*. The *MEC* court held the § 11-51-75 procedure satisfied the res judicata requirement because, pursuant to *Falco*, a plaintiff may file a separate action beyond the bill of exceptions and then after completing the appellate process, "present additional evidence on other claims if they remain unresolved." *Id*. at 338.

### 3. The non-appeal claims in this case

Exclusive remedy provisions are substantive and, therefore, must be applied to state law causes of action. *Podwall v. Robinson*, No. 2:16-cv-6088, 2016 WL 9342609, at *2 (C.D. Cal. Oct. 20, 2016) (collecting cases). To the extent § 11-51-75 would preclude additional state law claims based on the challenged municipal action, this Court therefore must apply the exclusivity

7

provision and dismiss the improper state law claims.

However, the United States Constitution's Supremacy Clause "guarantees that state law will not preempt or otherwise erode § 1983 causes of action." *Gronowski v. Spencer*, 424 F.3d 285, 297 (2d Cir. 2005). State exclusivity provisions do not, therefore, preclude § 1983 relief. *See Rosa v. Cantrell*, 705 F.2d 1208, 1221 (10th Cir. 1982) ("The simple answer to the defendant's argument that Rosa's acceptance of Workers' Compensation bars any recovery under § 1983 because the state has pronounced workmen's compensation to be an exclusive is that the state law conflicts with the remedy provided by § 1983 and therefore it must be superseded in this lawsuit."). Accordingly, even if § 11-51-75 represents the exclusive action for *state law* claims, it would not justify dismissal of Mathews' federal claims. *Id.*

As explained above, § 11-51-75 represents the exclusive remedy for *appealing* decisions of a municipal board. *Pearl River*, 289 So. 3d at 306. However, none of the cited authority supports the City's position that a litigant pursuing a § 11-51-75 appeal may not assert independent claims arising from the challenged decision. While it is true that *Cheeks* upheld the dismissal of a separate claim for injunctive relief, it did so on the limited basis that a plaintiff proceeding under § 11-51-75 may not "seek independent injunctive relief." 152 So. 3d at 1216. *Cheeks* did not hold that a court should dismiss claims for non-injunctive relief. Rather, *Falco* (as recognized by *MEC*) expressly contemplates that a plaintiff may pursue a § 11-51-75 appeal along with separate claims for compensatory damages, provided that a court hearing the claims resolve the appeal *before* allowing discovery or trial on the other claims.[1]  *See Falco*, 836 So. 2d at 720. Accordingly,

---

[1] Generally, state rules governing stays are procedural and, therefore, are inapplicable in federal court. *See Wolf v. Geico Ins. Co.*, 682 F. Supp. 2d 197, 198 n.1 (D.R.I. 2010) (motion to stay discovery governed by federal law) (collecting cases); *Mason v. United States*, 486 F. Supp. 2d 621, 625 (W.D. Tex. 2007) (declining to apply state law stay provision). Accordingly, the *Falco* rule requiring that an appeal be decided before allowing other claims to proceed likely would not apply in this case. Rather, the propriety of a stay of such claims, which has not yet been requested, would depend on consideration of the following five factors: "(1) the private interests of the plaintiffs in

8

because Mississippi law allows a party to bring independent actions alongside a § 11-51-75 appeal, dismissal of all Mathews' non-appeal claims would be inappropriate.

### B. Injunctive Relief

Mathews' "Claim for Temporary Injunction" seeks "an immediate temporary injunction against the City's termination, allowing Kris to go back to work, like normal, until this matter can be concluded." Doc. #2 at 5. The City argues that "Mississippi law is clear that the only injunctive relief available is that permitted as a component of the Plaintiff's 'exclusive remedy' afforded by Miss Code Ann. § 11-51-75. Any injunctive relief sought by Plaintiff as a separate claim outside of his Notice of Appeal should therefore be denied." Doc. #11 at 5. Mathews, citing *Falco*, responds that he is entitled to seek a temporary injunction under Mississippi Rule of Civil Procedure 62, which governs stays of proceedings to enforce judgment. Doc. #14 at 7. The City does not dispute that, under Mississippi law, a litigant pursuing a § 11-51-75 appeal is entitled to seek a temporary stay of the decision under Mississippi Rule 62. Doc. #16 at 7. However, it argues:

> Plaintiff's "Notice of Appeal" included a section titled "**IV. Claim for Temporary Injunction**" that did not cite nor reference MRCP 62, nor did the allegations of that Claim follow the language or requirements of MRCP 62. Rather, the allegations followed the elements of common-law injunctions. It is apparent by form and substance that plaintiff alleged and asserted a separate claim for injuctive [sic] relief that, according to *Falco Lime*, *MEC* and *Cheeks*, must be dismissed as improperly included in a 11-51-75 Notice of Appeal.

*Id*.

---

proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Cox v. Morris*, No. 3:18-cv-30, 2019 WL 1601367, at *4 (N.D. Miss. Apr. 15, 2019).

Even if the *Falco* rule applied, it would not preclude consideration of the merits of Mathews' non-appeal claims here. As quoted above, the rationale for the *Falco* stay is to avoid subjecting a municipality to discovery and a de novo trial when such procedures are unavailable in a § 11-51-75 appeal. Such considerations do not apply where, as here, a defendant seeks disposition of the non-appeal claims based on the pleadings.

9

The parties are correct on the relevant law. Injunctive relief related to a municipal board decision is unavailable under Mississippi law. *Falco*, 836 So. 2d at 716–17. However, a litigant proceeding under § 11-51-75 may seek a stay of the municipal decision under Mississippi Rule 62. *Id*.

As an initial matter, just as a state law cannot limit a plaintiff's ability to bring a § 1983 action, it "cannot limit the remedies available under § 1983." *Demarco v. Sadiker*, 952 F. Supp. 134, 142 (E.D.N.Y. 1996). Accordingly, state law limiting the availability of injunctive relief would not impact the relief available based on Mathews' federal claims. *See Bramlett v. Peterson*, 307 F. Supp. 1311, 1320 (M.D. Fla. 1969) ("Injunctive relief under 42 U.S.C. § 1983 in federal courts is not predicated upon, nor excluded by, … relief procedures under state law."). However, Mathews does not ground his request for injunctive relief in his federal claims. Rather, as argued in his response, Mathews contends the temporary injunctive relief claim invokes a stay under Mississippi Rule 62, as allowed under § 11-51-75. Thus, the only issue is whether Mathews' failure to specifically cite Mississippi Rule 62 precludes the relief he seeks. This issue, which implicates both federal pleading standards and the requirements for injunctive relief, depends on federal law. *See Genella v. Renaissance Media*, 115 F. App'x 650, 652–63 (5th Cir. 2004) ("While this case originated in state court and was later removed to federal court … pleadings must nevertheless conform to federal pleading requirements."); *John Paul Mitchell Sys. v. Quality King Distribs., Inc.*, 106 F. Supp. 2d. 462, 478 (S.D.N.Y. 2000) ("[A]lthough federal law determines the standard for issuing [a preliminary] injunction, state law determines whether the state law cause of action can support an injunction.").

First, under federal law, a request for temporary restraining order or preliminary injunction is a "form or [sic] relief, and not a claim or a cause of action." *NAS Elecs., Inc. v. Transtech Elecs.*

10

*PTE Ltd.*, 262 F. Supp. 2d 134, 149 (S.D.N.Y. 2003). Accordingly, a plaintiff need not specifically include such request for relief in his complaint. *See* 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2949 (3d ed. 2020) ("[A] preliminary injunction may be granted upon a motion made before a formal complaint is presented."). It follows that the failure to invoke the basis for injunctive relief in a complaint would not preclude such relief.

Furthermore, even if a plaintiff was required to specifically plead a request for injunctive relief, judgment on the pleadings would still be inappropriate because the federal pleading standards do not require perfect statements of legal theories, *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014), and because plaintiffs are entitled to clarify the basis for the relief they seek, *see, e.g.*, *Hindman v. Thompson*, 557 F. Supp. 2d 1293, 1307 (N.D. Okla. 2008). To the extent Mathews has clarified the basis for his request for injunctive relief, judgment on the pleadings is inappropriate.

### C. Procedural Due Process

Ordinarily, "[t]o state a Fourteenth Amendment due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Morris v. Livingston*, 739 F.3d 740, 750 (5th Cir. 2014). However, in a procedural due process claim, "the deprivation by state action … is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Id*. To satisfy the due process requirement, deprivation of a constitutionally protected interest "must, at a minimum, be preceded by notice and an opportunity for the individual to be heard." *Id*. The notice must be "adequate." *United States v. Berry*, 795 F. App'x 229, 239 (5th Cir. 2019); *see Jones v. La. Bd. of Supervisors of Univ. of La. Sys.*, 809 F.3d 231, 236 (5th Cir. 2015).

11

In his complaint, Mathews alleges that the City violated his procedural due process rights when it "wrongfully terminated" him. Doc. #2 at 4. The City does not dispute that Mathews had a property interest in his continued employment. *See* Doc. #11 at 8. Rather, it argues that the claim fails because Mathews "has not pled that he lacked notice and the opportunity to be heard." *Id.* (emphasis omitted). Mathews responds that "[q]uestions concerning the Defendant's board meeting should absolutely be moot with the Defendant failing to update the record in a timely manner." Doc. #14 at 11. Additionally, reciting facts not pled in his complaint, Mathews argues that he was provided insufficient notice of the hearing. *Id.* at 11–12.

Mathews' first argument rests on the unpled allegation that, in violation of § 11-51-75, the City failed to file a complete record of the municipal proceedings within thirty days of the filing of the notice of appeal. *Id.* at 3–4. As a result of this alleged failure, Mathews contends that "[t]he city has not shown that ANY HEARING whatsoever transpired or how such meeting transpired." *Id.* at 4. However, the City filed the record of the municipal proceedings on July 17, 2019, just nine days after Mathews filed his notice of appeal and well within the thirty-day limit provided by the statute. *See* Doc. #7-4.[2] Accordingly, Mathews' argument regarding the record is without merit.[3]

Turning to the merits of Mathews' due process claim, the Court begins by reiterating that the Rule 12(c) inquiry is confined to the pleadings and judicially noticeable facts. None of the new allegations contained in Mathews' response fall within either of these categories. Such allegations, therefore, have no bearing on the City's motion. The only question is whether

---

[2] A court may take judicial notice that a document was filed. *See In re Deepwater Horizon*, 934 F.3d 434, 440 (5th Cir. 2019).

[3] Even if the City failed to file the record as a part of Mathews' statutory appeal, such would not have excused Mathews from pleading a separate violation of procedural due process, as required by the federal rules.

Mathews' allegation that the vote for removal occurred "without timely notice" is sufficient to state a procedural due process violation.

Conclusory assertions of insufficient procedures do not state a claim. *See Broussard v. Lafayette-City Par. Consol. Gov't*, 45 F. Supp. 3d 553, 568 (W.D. La. 2014). Thus, where a plaintiff "makes only the conclusory assertion that the procedures were not meaningful" but provides no other details of the procedures or notice afforded, a procedural due process claim must fail. *Id.*; *see Doe v. Va. Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 502 (W.D. Va. 2019) (allegation that the plaintiff was denied a "meaningful opportunity to challenge the finding of responsibility" was insufficient to state claim for procedural due process violation); *Trackwell v. Hampton*, No. 3:11-cv-00463-MO, 2011 WL 6935325, at *1 (D. Or. Dec. 29, 2011) ("While his claim appears to be based on procedural due process, Mr. Trackwell alleges no specific deficiencies with the stalking order proceeding."). Here, because Mathews' allegations regarding the deficiency of notice are wholly conclusory and fail to state a claim, judgment on the pleadings is warranted on his procedural due process claim.

### D. Equal Protection

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o state shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A plaintiff asserting an Equal Protection Clause claim under § 1983 "must either allege that (a) a state actor intentionally discriminated against him because of membership in a protected class, or (b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Tex. Dep't of Ins.–Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (cleaned up).

In its motion, the City contends that Mathews has failed to state an equal protection claim

because he "has not identified a protected class of which he is a member, nor has he pled discriminatory intent." Doc. #11 at 10. Mathews responds that the complaint states a claim because it pleads that his "termination was intentional and arbitrary in that he was treated differently than other similarly suited [sic] City of Booneville employed firefighters and there is no rational basis for the difference in treatment." Doc. #14 at 13. The City replies that a "class of one" equal protection theory is inapplicable in the employment context. Doc. #16 at 8–9. The City is correct.

The law is clear that a "class-of-one theory of equal protection has no application in the public employment context." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 607 (2008). Accordingly, Mathews' equal protection claim, which relies on a class-of-one theory regarding the termination of his public employment, fails.

### E. State Law Tort Claims

The City seeks dismissal of Mathews' state law tort claims on the arguments that the City is entitled to discretionary immunity and that Mathews failed to comply with the notice requirement of the Mississippi Tort Claims Act ("MTCA").[4] Doc. #11 at 5. Mathews responds that he complied with the MTCA notice requirement by serving the Notice of Appeal on the City Clerk and that the City was not "unduly burdened, or otherwise disadvantaged, as a result of the instant matter being termed differently than an MTCA claim." Doc. #14 at 10. Mathews does not respond to the argument regarding discretionary function immunity.

Generally, "[t]he MTCA is the exclusive remedy against a governmental entity or employee pursuant to its specific terms." *Lefoldt ex rel. Natchez Reg'l Med. Ctr. Liquidation Tr.*

---

[4] The City also raises a specific argument as to Mathews' state law tort claim for wrongful termination. Because the Court concludes that all of Mathews' state claims must be dismissed, it need not address this claim-specific argument.

14

*v. Rentfro*, 853 F.3d 750, 753 (5th Cir. 2017). The MTCA requires that ninety days prior to filing suit, a plaintiff must file a "notice of claim with the chief executive officer of the governmental entity." Miss. Code Ann. § 11-46-11(1). The chief executive officer for a municipality is the city clerk. *Id.* at § 11-46-11(2)(a)(i). While a plaintiff need not comply with every aspect of the notice requirement, Mississippi law "requires substantial compliance." *Lee v. Mem'l Hosp. at Gulfport*, 999 So. 2d 1263, 1266 (Miss. 2008). However, "the ninety-day notice requirement … is a hard-edged, mandatory rule which the Court strictly enforces." *Univ. of Miss. Med. Ctr. v. Easterling*, 928 So. 2d 815, 820 (Miss. 2006) (quotation marks omitted). Because it is undisputed Mathews failed to comply with the ninety-day notice requirement, his state law claims, which are indisputably subject to the MTCA, must be dismissed. *Id.*

Even if Mathews complied with the notice requirement, his claims, which are all based on his allegedly wrongful termination, would still be subject to dismissal. Under the MTCA, "[a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim … [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." Miss. Code Ann. § 11-46-9(1)(d). Because "[e]mployment decisions are discretionary in Mississippi," tort claims premised on the termination of an employee fall under this exemption and are subject to dismissal. *See Coleman v. Miss. Dep't of Marine Res.*, No. 1:16-cv-289, 2016 WL 5794772, at *5–6 (S.D. Miss. Oct. 4, 2016); *Carr v. City of Yazoo City*, No. 5:10-cv-95, 2012 WL 1556501, at *2 (S.D. Miss. May 1, 2012).

### F.  Nature of Dismissal

"Generally, when deciding a … Rule 12(c) motion, courts have discretion whether to dismiss with or without prejudice." *Anwar v. Fairfield Greenwich Ltd.*, 118 F. Supp. 3d 591, 598

(S.D.N.Y. 2015); *see Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019) (affirming 12(c) dismissal without prejudice of several of the plaintiffs' claims); *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209 (5th Cir. 2010) (affirming 12(c) dismissal with prejudice). Ordinarily, dismissal without prejudice is appropriate when a plaintiff's pleadings are insufficient "[b]ut the possibility remains that they will be able to state such claims in the future." *Waller*, 922 F.3d at 603. The Court concludes that because the procedural due process claim was dismissed based on conclusory allegations, there is a possibility Mathews would be able to state such a claim in the future. However, because the dismissals of the equal protection claims and state law tort claims were based on substantive defects, such dismissals should be with prejudice.

## V
## Conclusion

The City's motion for judgment on the pleadings [10] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED to the extent it seeks dismissal of Mathews' due process claim, equal protection claim, and state law tort claims. The motion is DENIED in all other respects. Mathews' equal protection claim and his state law tort claims are **DISMISSED with prejudice**. Mathews' procedural due process claim is **DISMISSED without prejudice**.

**SO ORDERED**, this 22nd day of May, 2020.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**