**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**KRISTOPHER DANIEL MATHEWS**                                        **PLAINTIFF**

**V.**                                                                                    **NO. 1:19-CV-137-DMB-DAS**

**CITY OF BOONEVILLE, MISSISSIPPI,**
**et al.**                                                                                **DEFENDANTS**

## ORDER

Before the Court is Kristopher Daniel Mathews' statutory appeal of the City of Booneville's decision to terminate his employment as a firefighter.

**I**
### Procedural History

On July 8, 2019, Kristopher Daniel Mathews, pursuant to § 11-51-75 of the Mississippi Code, filed in the Circuit Court of Prentiss County, Mississippi, a "Notice of Appeal" challenging the City of Booneville's decision to terminate his employment as a firefighter. Doc. #2. In addition to asserting his statutory right of appeal in the notice of appeal, Mathews sought injunctive relief and damages based in part on alleged violations of the United States Constitution and state law tort claims. *Id*. at ¶¶ 16–29. The pleading does not differentiate between the allegations and the claims. Rather, it includes factual allegations referencing violations of state and federal law, *id*. at ¶¶ 16–18, and then incorporates these allegations into a "Claim for Temporary Injunction," a "Claim for Compensatory Damages," and a "Demand for Punitive Damages."

On July 17, 2019, the City filed in the Circuit Court an answer to Mathews' appeal. Doc. #7-3. The same day, it filed a record of appeal. Doc. #7-4. The document states:

> The Record consist [sic] of: Appellants Notice of Appeal and attached exhibits A thru F and Four (4) disciplinary write ups of Appellant, those dated 5-2-15; 7-4-15; 11-7-15; 6-19-19 and attached hereto. In addition, the minutes of the July 2, 2019

and July 16, 2019 minutes will be file [sic] when they are approved by the Board.

Doc. #7-4 at PageID 285.

On July 19, 2019, the City removed the state court proceedings to the United States District Court for the Northern District of Mississippi on the basis of diversity jurisdiction. Doc. #1. The City then filed a motion for judgment on the pleadings. Doc. #10. On May 22, 2020, after the parties fully briefed[1] the City's motion, this Court dismissed Mathews' claims, leaving only his statutory notice of appeal. Doc. #18.

Pursuant to a briefing schedule set by this Court, Mathews filed a brief in support of his appeal on June 5, 2020. Doc. #19. One of the principal arguments in Mathews' brief was that because the record on appeal did not include the Board's minutes, "the board's speech and actions [are] not evidenced [and] this Court has no choice but to overturn the City's decision." *Id*. at 14.

On June 25, 2020, the City's Municipal Clerk filed a "supplement" to the record which includes certain Board minutes. Doc. #20. The same day, the City filed a motion, which Mathews opposed, to amend the briefing schedule to allow Mathews an opportunity to supplement his brief in light of the newly supplemented record. Docs. #21, #26. The next day, Mathews moved to strike the supplemental record as untimely. Doc. #24.

On July 2, 2020, this Court denied the motion to strike as untimely because "while the Court must decide the case on the appeal record as required by state law, it is not bound by state deadlines for submitting such a record. Thus, in the absence of any specific deadline imposed by this Court, the supplementation may not be deemed untimely and the motion to strike must be denied." Doc. #32 at 5. The Court thus granted the City's motion to amend the briefing schedule to allow Mathews to file a revised brief. *Id*.

---

[1] *See* Docs. #11, #14, #16.

Mathews filed a revised brief on July 23, 2020.  Doc. #33.  On August 13, 2020, the City filed a response brief, Doc. #35, and an amended supplement to the state court record, Doc. #34.[2] Mathews filed a reply on August 27, 2020.  Doc. #36.

**II**
**Standard**

Mississippi Code § 11-51-75 provides:

> Any person aggrieved by a judgment or decision of the board of supervisors of a county, or the governing authority of a municipality, may appeal the judgment or decision to the circuit court of the county in which the board of supervisors is the governing body or in which the municipality is located.

The statute sets forth a multistep process for submitting the record to the court which hears the appeal of a decision of a municipal authority.  *See id.*  Once the record has been submitted, the court must "hear and determine the [appeal] on the record and … affirm or reverse the judgment." *Id.* § 11-51-75(d).

Ordinarily, a court may not reverse a "decision of [a] municipality unless [the] decision is arbitrary, capricious, discriminatory, or is illegal, or without a substantial evidentiary basis." *Baymeadows, LLC v. City of Ridgeland*, 131 So. 3d 1156, 1159 (Miss. 2014).  The burden of making this showing rests with the appellant.  *Mathis v. City of Greenville*, 724 So. 2d 1109, 1112 (Miss. Ct. App. 1998) (collecting cases).  "An act is arbitrary when it is not done according to reason or judgment, but depending on the will alone. Capricious is defined as any act done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles."  *Burks v. Amite Cnty. Sch. Dist.*, 708 So. 2d

---

[2] This supplement includes a portion of the July 2 minutes which was omitted from the initial supplement.  *Compare* Doc. #20 *with* Doc. #34.  These minutes reference Mathews' termination.  Doc. #34 at PageID 570.  Mathews has not moved to strike this supplement.  He has, however, raised arguments as to the substance of the supplement in his reply. Because this supplement was not in the record at the time Mathews filed his initial brief, the Court will consider the new arguments advanced in Mathews' reply.

1366, 1370 (Miss. 1998) (cleaned up).

### III
### Factual Record

During the period relevant to this action, Mathews was employed as a lieutenant in the City of Booneville's Fire Department.  Doc. #7-4 at PageID 353.  During the same time, the City of Booneville maintained an "Employees Policies and Procedures Manual."  *Id*. at PageID 299.

Section 1(A) of the Manual, titled "Introduction of Employment," states in relevant part:

> This handbook is not a contract express or implied, and it does not alter your employment at will status. Nothing in this handbook should be construed as a guarantee of continued employment. Your employment may be terminated at any time, for any reason, with or without cause, with no advance prior notice. Likewise, you may terminate your employment at any time for any reason without prior notice.

*Id*. at PageID 306.  Additionally, the Manual authorizes disciplinary action up to termination for an "[a]bsence from work without notifying [the] Department Head" or a "[f]ailure to report to work or leaving work without a satisfactory reason."  *Id*. at PageID 340–41.

Section 4 of the Manual, titled "Disciplinary Action/Grievances and Appeals," states:

> The Mayor and Board of Alderman require that all forms of discipline and corrective action adhere with dues [sic] process. Supervisory employees and/or Department Heads shall exercise corrective action when an employee violates established rules of appropriate conduct or is in violation of this handbook. Such corrective action shall be in accordance with the policies and procedures establish [sic] herein. Distinguishes [sic] may be made by supervisory personnel and/or Department head employees between more serious and les [sic] serious action of misconduct and provide corrective action accordingly.
>
> **Nothing in this handbook should be construed as a guarantee of continued employment. Your employment may be terminated at any time, for any reason, with or without cause, with no advance prior notice. Likewise, you may terminate your employment at any time for any reason without prior notice.**

*Id*. at PageID 339.

During the evening of Wednesday, June 12, 2019, Mathews fell ill with "chest pain and

4

nausea*."* *Id.* at PageID 295. Due to his illness, Mathews failed to report for his shift the following morning. *Id.* at PageID 295, 297. Mathews did not notify the station of his absence. *Id.* at PageID 297. However, at some point that morning, a firefighter returning from the night shift stopped at Mathews' residence and spoke with Mathews' wife. *Id.* at PageID 295. Mathews' wife informed the firefighter that Mathews was ill. *Id.* The firefighter called the Main Station and told the captain on duty. *Id.* at PageID 353.

On June 13, 2019, Mathews presented to the Faith Family Clinic of Kossuth in Corinth, Mississippi. *Id.* at PageID 296. The clinic found Mathews was suffering from an "irregular" heartbeat and medically excused him from work until June 16, 2019. *Id.* at PageID 295–96. Mathews called Fire Chief Michael Rutherford and "explained he had heart problems during the night and was sick." *Id.* at PageID 353. Mathews also provided Rutherford his medical note. *Id.* Rutherford told Mathews that he "was not going to get paid for that day." *Id.*

On June 19, 2019, Battalion Chief Mike Kilgore issued Mathews a written warning for failing to show up for his shift and for failing to notify the Fire Department of his absence. *Id.* at PageID 297. Mathews continued to work as a firefighter until July 2, 2019, when the Booneville Board of Aldermen voted to terminate his employment. Doc. #34 at PageID 570. The Board's introductory minutes from this meeting include a note that "[t]here first came on for consideration, the request to add … to the agenda … [a] Fire Department personnel matter." *Id.* at PageID 565. The minutes later state:

> There next came on for consideration, the request to go into closed session, to determine if an executive session was needed. Alderman McCoy made said motion, seconded by Alderman Michael, and with the Alderman present voting "Aye", the motion unanimously carried.
>
> While in closed session, it was determined that an executive session was needed. Alderman Stevens made said motion, seconded by Alderman Scott, and with the Alderman present voting "Aye", the motion unanimously carried.

Alderman McCoy made a motion to return to open session, seconded by Alderman Michael, and with the Aldermen present voting "Aye", the motion unanimously carried.

Alderman Michael made a motion to terminate the employment of Kris Mathews, effective immediately. Alderman Scott seconded the motion, and with the Aldermen present voting "Aye", the motion unanimously carried.

*Id*. at PageID 570.

On July 3, 2019, Mathews submitted to Rutherford a "Grievance Form" challenging his termination. Doc. #7-4 at PageID 298. At a July 16, 2019, meeting, the Board considered Mathews' grievance and voted to uphold his termination. Doc. #20 at PageID 469. The minutes from this meeting state:

There next came on for consideration, the request to go into closed session to determine if an executive session was needed. Alderman Stevens made a motion to go into closed session, seconded by Alderman Williams and with the Alderman present voting "Aye", the motion unanimously carried.

While in closed session, it was determined that an Executive Session was needed. Alderman Michael made a motion to go into Executive Session, seconded by Alderman Williams and with the Alderman present voting "Aye", the motion unanimously carried.

Alderman Williams made the motion to return to Open Session, seconded by Alderman Michael, and with the Alderman present voting "Aye", the motion unanimously carried.

Back in open session, it was announced that a hearing was held on the grievance filed by Fire Department employee, Kristopher Mathews. Alderman Michael made a motion to uphold the Board's decision on the termination of employment of Mr. Mathews. The motion was seconded by Alderman Scott, with the Alderman present voting "Aye", the motion unanimously carried.

*Id*.

# IV
# Analysis

Mathews' notice of appeal and his accompanying brief contain enumerations of error

6

sounding in federal and state law.

## A. Federal Law Claims

Mathews' notice of appeal references violations of his equal protection and due process rights. Doc. #2 at 4–5. His appeal briefing addresses only the due process claim. *See* Docs. #19, #33.

To the extent Mathews does not address the nature of his equal protection enumeration of error, the Court deems the equal protection ground abandoned. Even if the equal protection claim was not abandoned, it would fail for the reasons stated in this Court's May 22, 2020, order dismissing Mathews' § 1983 equal protection claims with prejudice. *See* Doc. #18 at 13–14. Specifically, the claims fail because Mathews has not argued (much less introduced evidence) that his termination was due to his membership in a protected class and a "class of one" equal protection claim is inapplicable in the context of public employment. *Id.* (citing *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 607 (2008)).

As for Mathews' due process basis for appeal, the Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The protections afforded by the due process clause take two forms, procedural and substantive. *Jauch v. Choctaw Cnty.*, 874 F.3d 425, 430 (5th Cir. 2017). "When the fault lies in a denial of fundamental procedural fairness, the question is one of procedural due process." *Id.* (internal quotation marks omitted). "Substantive due process bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Marco Outdoor Advert., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 672 n.3 (5th Cir. 2007) (internal quotation marks omitted). Both types of claims require a deprivation of a life, liberty, or property interest. *See Cripps v. La. Dep't of Agric. & Forestry*, 819 F.3d 221, 232 (5th Cir. 2016)

7

(substantive due process); *Morris v. Livingston*, 739 F.3d 740, 749–50 (5th. Cir. 2014). Accordingly, to succeed on the due process claim of error, Mathews must be able to show that he had a property interest in his continued employment. He cannot.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (internal quotation marks omitted). "Property interests are not created by the Constitution. Instead, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 230 (5th Cir. 2020) (cleaned up). However, "[t]hough state law is the source of the right, the question of whether a property interest is created is answered by federal constitutional law." *Stem v. Gomez*, 813 F.3d 205, 211 (5th Cir. 2016). Thus, the relevant question is not whether state law identifies a particular benefit as a property interest specifically but whether, under *state law* there is a "legitimate claim of entitlement" which, under *federal law* "rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Gonzales*, 545 U.S. at 757. Entitlements may "aris[e] from statute, regulation, contract, or the like." *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 735 (5th Cir. 2008).

An employee can have a property interest in continued employment if it is "created directly by state statute or by a written contract, or by a 'mutually explicit understanding' enforceable under state law as an implied contract.'" *Johnson v. City of Shelby*, 642 F. App'x 380, 383 (5th Cir. 2016) (quoting *Johnson v. Sw. Miss. Reg'l Med. Ctr.*, 878 F.2d 856, 858 (5th Cir. 1989)). "Under Mississippi law, an employee is considered an at-will employee unless an express or implied contract, state law, or local ordinance indicates otherwise." *Id.* (citing *Levens v. Campbell*, 733

So. 2d 753, 763 (Miss. 1999)).  While the inclusion of a binding disciplinary procedure in a handbook may create a property interest in employment, *Bobbitt v. Orchard, Ltd.*, 603 So. 2d 356, 361 (Miss. 1992), this rule does not apply "if the employer has explicitly characterized an employment relationship as at will." *Johnson*, 642 F. App'x at 384 (citing *Hartle v. Packard Elec.*, 626 So. 2d 106, 110 (Miss. 1993)).

Although less than clear, it appears that Mathews argues he had a property interest in continued employment based on certain alleged ambiguities in the Manual's at-will disclaimers.[3] Specifically, Mathews argues that the disclaimer first appears under the heading "(E) Probationary Period and Termination at Will," which suggests it applies only to probationary firefighters.  Doc. #33 at 22.  Mathews then argues that the other inclusions of the disclaimers (which appear regularly throughout the Manual, sometimes with slightly different wording) are similarly limited.  *Id.* at 23–27.  This argument is wholly without merit and is borderline sanctionable.

Contrary to Mathews' argument, the first inclusion of the disclaimer is *not* in the "Probationary Period" heading of Subsection (E).  Rather, as quoted above, the disclaimer is included in the *very first* subsection titled, "Introduction of Employment."  *See* Doc. 7-4 at PageID 306.  This disclaimer, which unambiguously applies to employment generally, makes clear that the Manual "is not a contract express or implied, and it does not alter your employment at will status."  *Id*.  Given this unambiguous disclaimer, the Manual cannot be used to create a property interest in Mathews' employment.  Accordingly, his due process claims must necessarily fail.

### B.  State Law Claims

Mathews' state law claims center on one argument—that even if he was an at-will

---

[3] Mathews also argues that there is no evidence he ever received the Manual.  Doc. #33 at 21.  However, if he never received the Manual, then the presumption of at-will employment would apply and Mathews could claim no property interest in his employment.

employee, the City was required to state a reason for his termination in its Board minutes and that, because it did not, reversal is required. Before turning to the merits of this argument, it is necessary to clarify the basis of this Court's jurisdiction over these claims. This requires a brief description of the United States Supreme Court's decision in *City of Chicago v. International College of Surgeons*, 522 U.S. 156 (1997).

In *International College of Surgeons*, during the relevant period, Illinois law authorized a plaintiff to file an "action to review any final administrative decision." *Id.* at 162 n.2 (quoting 735 Ill. Comp. Stat. Ann. 5/3-103 (1997)). The International College of Surgeons and the United States Section of the International College of Surgeons, pursuant to the Illinois Administrative Review Law, filed state court actions for judicial review regarding certain decisions made by the Chicago Landmarks Commission. *Id*. at 159–60. These complaints alleged that the challenged decisions violated the Due Process, Takings, and Equal Protection clauses of the United States Constitution and otherwise violated state law. *Id*. at 160. The defendants removed the case based on federal question jurisdiction. *Id*. at 161. After the district court granted summary judgment in the defendants' favor, the plaintiffs appealed, and the Seventh Circuit reversed for lack of jurisdiction. *Id*. The Supreme Court "granted certiorari to address whether a case containing claims that local administrative action violates federal law, but also containing state law claims for on-the-record review of the administrative findings, is within the jurisdiction of federal district courts." *Id*. at 163.

In answering the jurisdictional question, the Supreme Court recognized the general rule that "even though state law creates a party's causes of action, its case might still arise under the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law." *Id*. at 164. (cleaned up). The

Supreme Court then found that the federal challenges to the administrative decisions, "which turn exclusively on federal law, unquestionably fit within this rule" and that the "accompanying state law claims" fell under the court's supplemental jurisdiction. *Id*. at 164–65.

Based on the analytical structure in *International College of Surgeons*, assignments of error challenging a state administrative decision are properly deemed independent claims such that federal jurisdiction must exist for each claimed error. *See Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 137 (2d Cir. 2002) (a court must "examine the nature of the federal question raised in each claim to see if it is sufficiently substantial to warrant federal jurisdiction") (cleaned up). Assignments that require resolution of a substantial question of federal law fall within the Court's federal question jurisdiction. Assignments that implicate only state law must implicate another jurisdictional category, such as supplemental jurisdiction.

Here, Mathews has identified no jurisdictional source for his state law enumerations of error. Accordingly, jurisdiction over these claims depends on whether this Court should exercise supplemental jurisdiction. *See Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 232 (5th Cir. 2016) ("Because the state law claim does not raise a federal question and because the parties are not diverse, we consider *sua sponte* whether supplemental jurisdiction exists.").

Federal district courts have "supplemental jurisdiction over all … claims that are so related to claims in the action within [the district court's] original jurisdiction that they form part of the same case or controversy under Article III,' including 'claims that involve the joinder or intervention of additional parties.'" *D'Onofrio v. Vacation Publ'ns., Inc.*, 888 F.3d 197, 206 (5th Cir. 2018) (quoting 28 U.S.C. § 1367(c)). But a court may decline to exercise supplemental jurisdiction after consideration of the following factors: (1) whether "the claim raises a novel or complex issue of State law;" (2) whether "the claim substantially predominates over the claim or

claims over which the district court has original jurisdiction;" (3) whether "the district court has dismissed all claims over which it has original jurisdiction;" (4) whether there are "exceptional circumstances [that provide] compelling reasons for declining jurisdiction;" (5) judicial economy; (6) convenience; (7) fairness; and (8) comity. *Id*. at 207.

Mathews' state law claims involve complex issues involving the interplay between Mississippi's at-will rules, the minute requirements for municipalities, and the traditional state law standard of review for § 11-51-75 appeals. These claims predominate the claims over which this Court has jurisdiction, which have all been resolved in the City's favor. *See Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) ("The second and third factors weigh in favor of declining jurisdiction. After the United States was dismissed from the lawsuit, there were no claims of original jurisdiction remaining, and state law claims dominated."). Furthermore, the Court is aware of no exceptional circumstances which would justify retention of the claims.

The judicial economy factor asks whether the district court has "substantial familiarity or [is] intimately familiar" with the remaining state law claims such that remand would result in duplication of "research, discovery, briefing, hearings, or other trial preparation work." *Enochs v. Lampasas Cnty*, 641 F.3d 155, 159–60 (5th Cir. 2011). The Court has no such familiarity here with respect to Mathews' remaining state law claims.

The convenience factor asks whether the state court would be closer to where "the parties, witnesses, and evidence [are] located." *Id*. at 160. To this end, the Court takes judicial notice of the fact that the Prentiss County Courthouse is located in the City of Booneville, and that the City of Boonville is more than two hundred miles from the federal courthouse in this district's Greenville division and more than fifty miles from the federal courthouse in this district's Aberdeen division. *See Richards v. Stone*, No. 19-0966, 2019 WL 6997917, at *4 (W.D. La. Nov.

4, 2019) (taking judicial notice of location of courthouse and distance between courthouse and correctional facility).

The fairness factor balances the fairness of having purely state law claims heard in state court against a party's interest in avoiding prejudice. *Enochs*, 641 F.3d at 160. To the extent the Court foresees no prejudice from remand, fairness also weighs against exercising supplemental jurisdiction.

Finally, the comity factor asks whether the state court would be better "equipped" to determine the state law issues than the federal court. *Id.* To the extent the Circuit Court of Prentiss County ordinarily hears § 11-51-75 appeals, and this Court does not, the comity factor also weighs in favor of remand.

In sum, all relevant factors weigh in favor of remand. Accordingly, the Court declines to exercise supplemental jurisdiction and will remand the state law enumerations of error to the Circuit Court of Prentiss County.

## V
## Conclusion

The City's decision is **AFFIRMED** with respect to the federal constitutional claims raised by Mathews. The state law claims are **REMANDED** to the Circuit Court of Prentiss County. This case is **CLOSED**.

**SO ORDERED**, this 30th day of July, 2021.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**